# SUPREME COURT OF THE UNITED STATES

## KEITH LANCE, ET AL., APPELLANTS *v.* GIGI DENNIS, COLORADO SECRETARY OF STATE

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

No. 05–555.  Decided February 21, 2006

PER CURIAM.

The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by "state-court losers" challenging "state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp.* v. *Saudi Basic Industries Corp.,* 544 U. S. 280, 284 (2005).  In this case, the District Court dismissed plaintiffs' suit on the ground that they were in privity with a state-court loser.  We hold that the *Rooker-Feldman* doctrine does not bar plaintiffs from proceeding, and vacate the District Court's judgment.

I

This is the latest of several rounds of litigation involving the State of Colorado's congressional redistricting after the 2000 census, under which the State gained a seat in the House of Representatives.  *Lance* v. *Davidson*, 379 F. Supp. 2d 1117, 1121 (2005).  The first round began in May 2001.  When the Colorado General Assembly failed to pass a redistricting plan for the 2002 congressional elections by the close of its regular session, a group of Colorado voters asked the state courts to create a plan.  The courts agreed, drawing a new map reflecting the additional district.  See *Beauprez* v. *Avalos*, 42 P. 3d 642 (Colo. 2002) (en banc).  The 2002 elections were held using this court-ordered plan.

The General Assembly passed its own redistricting plan in the spring of 2003, prompting further litigation—this

time about which electoral map was to govern, the legislature's or the court's. Two suits were filed seeking to enjoin the legislature's plan: an original action in the Colorado Supreme Court by the state attorney general seeking to require the secretary of state to use the court-ordered plan, and a similar action brought in a lower state court by several proponents of the court-ordered plan. 379 F. Supp. 2d, at 1121. After the Colorado General Assembly intervened to defend its plan in the first case, the Colorado Supreme Court held that the plan violated Article V, §44, of the State Constitution, which the court construed to limit congressional redistricting to "once per decade." *People ex rel. Salazar* v. *Davidson,* 79 P. 3d 1221, 1231 (2003) (en banc). It therefore ordered the secretary of state to use the court-created plan. We denied certiorari. 541 U. S. 1093 (2004).

The second suit was removed to federal court by the defendants on the basis of plaintiffs' federal-law claims. See *Keller* v. *Davidson,* 299 F. Supp. 2d 1171, 1175 (Colo. 2004). Once *Salazar* was decided by the Colorado Supreme Court, the viability of the defendants' counterclaims was the only remaining issue. A three-judge District Court held that the defendants were barred by the *Rooker-Feldman* doctrine from amending their counterclaims to assert additional challenges to the decision in *Salazar*. It also held that the defendants' original counterclaims, while not barred by the *Rooker-Feldman* doctrine, were precluded under Colorado law by the judgment in *Salazar*. Accordingly, the court dismissed the case.

Finally, this suit: Before the dismissal in *Keller*, several Colorado citizens unhappy with *Salazar* filed an action in the District Court seeking to require the secretary of state to use the legislature's plan.[1] The plaintiffs argued that

--------

[1] Although the secretary of state defended the legislature's plan in *Salazar*, following that decision she agreed to defend the court-ordered

Per Curiam

Article V, §44, of the Colorado Constitution, as interpreted by the Colorado Supreme Court, violated the Elections Clause of Article I, §4, of the U. S. Constitution ("The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof"), and the First Amendment's Petition Clause ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances"). The defendants filed a motion to dismiss, arguing that the *Rooker-Feldman* doctrine and Colorado preclusion law barred any attack on the Colorado Supreme Court's judgment in *Salazar* and that the plaintiffs had failed to state a valid Petition Clause claim.

The three-judge District Court ruled that under the *Rooker-Feldman* doctrine, it had no jurisdiction to hear the Elections Clause claim. 379 F. Supp. 2d, at 1127. The *Rooker-Feldman* doctrine, the court explained, includes three requirements: (1) "the party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment or have been in privity with such a party"; (2) "the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment"; and (3) "the federal claim must not be parallel to the state-court claim." 379 F. Supp. 2d, at 1124. The District Court found the first requirement satisfied on the ground that the citizen plaintiffs were in privity with the Colorado General Assembly—a losing party in *Salazar.* Relying on our decisions in *Washington* v. *Washington State Commercial Passenger Fishing Vessel Assn.,* 443 U. S. 658 (1979), and *Tacoma* v. *Taxpayers of Tacoma,* 357 U. S. 320 (1958), the court stated that "when a state government litigates a matter of public concern,

─────────

plan in this litigation and to allow the state attorney general to represent her. 379 F. Supp. 2d 1117, 1122, n. 3 (Colo. 2005).

that state's citizens will be deemed to be in privity with the government for preclusion purposes." 379 F. Supp. 2d, at 1125. This principle, the court reasoned, applies "with equal force in the *Rooker-Feldman* context." *Ibid.* The court went on to conclude that the Elections Clause claim was actually raised in *Salazar,* or inextricably intertwined with that decision, and was not parallel to the claims presented in *Salazar.* As to the Petition Clause claim, the court ruled that neither *Rooker-Feldman* nor Colorado preclusion law prevented the court from proceeding to the merits, but that plaintiffs failed to state a claim. 379 F. Supp. 2d, at 1132; see Fed. Rule Civ. Proc. 12(b)(6).

The plaintiffs appealed. See 28 U. S. C. §1253. We now note jurisdiction, and address whether the *Rooker-Feldman* doctrine bars the plaintiffs from proceeding because they were in privity with a party in *Salazar.* We conclude it does not, and vacate the judgment of the District Court.

## II

This Court is vested, under 28 U. S. C. §1257, with jurisdiction over appeals from final state-court judgments. We have held that this grant of jurisdiction is exclusive: "Review of such judgments may be had *only* in this Court." *District of Columbia Court of Appeals* v. *Feldman,* 460 U. S. 462, 482 (1983) (emphasis added); see also *Atlantic Coast Line R. Co.* v. *Locomotive Engineers,* 398 U. S. 281, 286 (1970); *Rooker* v. *Fidelity Trust Co.,* 263 U. S. 413, 416 (1923). Accordingly, under what has come to be known as the *Rooker-Feldman* doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.

The *Rooker-Feldman* doctrine takes its name from the only two cases in which we have applied this rule to find that a federal district court lacked jurisdiction. In *Rooker*, a party who had lost in the Indiana Supreme Court, and

failed to obtain review in this Court, filed an action in federal district court challenging the constitutionality of the state-court judgment. We viewed the action as tantamount to an appeal of the Indiana Supreme Court decision, over which only this Court had jurisdiction, and said that the "aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." 263 U. S., at 416. *Feldman*, decided 60 years later, concerned slightly different circumstances, with similar results. The plaintiffs there had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals, and sought review of these decisions in federal district court. Our decision held that to the extent plaintiffs challenged the Court of Appeals decisions themselves—as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals—their sole avenue of review was with this Court. 460 U. S., at 476.

Neither *Rooker* nor *Feldman* elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since *Feldman* have tended to emphasize the narrowness of the *Rooker-Feldman* rule. See *Exxon Mobil,* 544 U. S., at 292 (*Rooker-Feldman* does not apply to parallel state and federal litigation); *Verizon Md. Inc.* v. *Public Serv. Comm'n of Md.,* 535 U. S. 635, 644, n. 3 (2002) (*Rooker-Feldman* "has no application to judicial review of executive action, including determinations made by a state administrative agency"); *Johnson* v. *De Grandy,* 512 U. S. 997, 1005–1006 (1994) (*Rooker-Feldman* does not bar actions by a nonparty to the earlier state suit). Indeed, during that period, "this Court has never applied *Rooker-Feldman* to dismiss an action for want of jurisdiction." *Exxon Mobil, supra,* at 287.

In *Exxon Mobil*, decided last Term, we warned that the lower courts have at times extended *Rooker-Feldman* "far beyond the contours of the *Rooker* and *Feldman* cases, overriding Congress' conferral of federal-court jurisdiction

concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S. C. §1738." 544 U. S., at 283. *Rooker-Feldman*, we explained, is a narrow doctrine, confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U. S., at 284.

Although we have never addressed the precise question before us, we have held *Rooker-Feldman* inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding. See *De Grandy, supra,* at 1006. In *De Grandy,* the State of Florida sought, using *Rooker-Feldman*, to prevent the United States from bringing a challenge under §2 of the Voting Rights Act of 1965 to the reapportionment of state electoral districts. The Florida Supreme Court, in an action initiated by the state attorney general, had already declared the law valid under state and federal law. We held that *Rooker-Feldman* did not bar the United States from bringing its own action in federal court because the United States "was not a party in the state court," and "was in no position to ask this Court to review the state court's judgment and has not directly attacked it in this proceeding." 512 U. S., at 1006.

In the case before us, plaintiffs were plainly not parties to the underlying state-court proceeding in *Salazar*. *Salazar* was an action brought by the state attorney general against the secretary of state, in which the Colorado General Assembly intervened. 79 P. 3d, at 1227. The four citizen-plaintiffs here did not participate in *Salazar*, and were not in a "position to ask this Court to review the state court's judgment." *De Grandy, supra,* at 1006; see *Karcher* v. *May,* 484 U. S. 72, 77 (1987) ("[T]he general rule [is] that one who is not a party or has not been treated as a

party to a judgment has no right to appeal therefrom").

Although the District Court recognized the "general rule" that "*Rooker-Feldman* may not be invoked against a federal-court plaintiff who was not actually a party to the prior state-court judgment," 379 F. Supp. 2d, at 1123, it nevertheless followed Tenth Circuit precedent in allowing application of *Rooker-Feldman* against parties who were in privity with a party to the earlier state-court action. 379 F. Supp. 2d, at 1123 (citing *Kenmen Eng.* v. *Union,* 314 F. 3d 468, 481 (2002)). In determining whether privity existed, the court looked to cases concerning the preclusive effect that state courts are required to give federal-court judgments. 379 F. Supp. 2d, at 1125 (citing *Washington,* 443 U. S., at 693, n. 32; *Taxpayers of Tacoma,* 357 U. S., at 340–341). It concluded that—for *Rooker-Feldman* as well as preclusion purposes—"the outcome of the government's litigation over a matter of public concern binds its citizens." 379 F. Supp. 2d, at 1125.

The District Court erroneously conflated preclusion law with *Rooker-Feldman*. Whatever the impact of privity principles on preclusion rules, *Rooker-Feldman* is not simply preclusion by another name. The doctrine applies only in "limited circumstances," *Exxon Mobil*, *supra*, at 291, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. The *Rooker-Feldman* doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.[2]

A more expansive *Rooker-Feldman* rule would tend to

---

[2] In holding that *Rooker-Feldman* does not bar plaintiffs here from proceeding, we need not address whether there are *any* circumstances, however limited, in which *Rooker-Feldman* may be applied against a party not named in an earlier state proceeding—*e.g.*, where an estate takes a *de facto* appeal in a district court of an earlier state decision involving the decedent.

supplant Congress' mandate, under the Full Faith and Credit Act, 28 U. S. C. §1738, that federal courts "'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" *Baker* v. *General Motors Corp.,* 522 U. S. 222, 246 (1998) (quoting *Kremer* v. *Chemical Constr. Corp.,* 456 U. S. 461, 466 (1982)); see *Exxon Mobil, supra*, at 293. Congress has directed federal courts to look principally to *state* law in deciding what effect to give state-court judgments. Incorporation of preclusion principles into *Rooker-Feldman* risks turning that limited doctrine into a uniform *federal* rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act.[3]

\*     \*     \*

The judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

[3] Our holding also disposes of the claim, which the District Court did not reach, that plaintiffs were barred by *Rooker-Feldman* because they were in privity with the secretary of state, the other losing party in *People ex rel. Salazar* v. *Davidson*, 79 P. 3d 1221 (Colo. 2003) (en banc). We do not pass on the District Court's resolution of the merits of plaintiffs' Petition Clause claim.

# SUPREME COURT OF THE UNITED STATES

KEITH LANCE, ET AL., APPELLANTS *v.* GIGI DENNIS,
COLORADO SECRETARY OF STATE

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLORADO

No. 05–555.   Decided February 21, 2006

JUSTICE GINSBURG, with whom JUSTICE SOUTER joins,
concurring.

I agree in full with the Court's correction of the District
Court's *Rooker-Feldman* error, and therefore join the
Court's opinion.  Although JUSTICE STEVENS has persua-
sively urged that issue preclusion warrants affirmance,
see *post*, at 2–3 (dissenting opinion), that question of
Colorado law seems to me best left for full airing and
decision on remand.

# SUPREME COURT OF THE UNITED STATES

KEITH LANCE, ET AL., APPELLANTS *v.* GIGI DENNIS, COLORADO SECRETARY OF STATE

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

No. 05–555.　Decided February 21, 2006

JUSTICE STEVENS, dissenting.

*Rooker* and *Feldman* are strange bedfellows. *Rooker*, a unanimous, three-page opinion written by Justice Van Devanter in 1923, correctly applied the simple legal proposition that only this Court may exercise appellate jurisdiction over state-court judgments. See *Rooker* v. *Fidelity Trust Co.*, 263 U. S. 413, 416. *Feldman*, a nonunanimous, 25-page opinion written by Justice Brennan in 1983, was incorrectly decided and generated a plethora of confusion and debate among scholars and judges.\* See *District*

―――――――

　\*See, *e.g.*, Comment, Collateral Estoppel and the *Rooker-Feldman* Doctrine: The Problematic Effect These Preclusion and Jurisdictional Principles Have on Bankruptcy Law, 21 Emory Bankr. Dev. J. 579 (2005); Comment, The *Rooker-Feldman* Doctrine: Toward a Workable Role, 149 U. Pa. L. Rev. 1555 (2001); Proctor, Wirth, & Spencer, *Rooker-Feldman* and the Jurisdictional Quandary, 2 Fla. Coastal L. J. 113 (2000); Rowley, Tenth Circuit Survey, The *Rooker-Feldman* Doctrine: A Mere Superfluous Nuance or a Vital Civil Procedure Doctrine? An Analysis of the Tenth Circuit's Decision in *Johnson v. Rodrigues*, 78 Denver U. L. Rev. 321 (2000); Symposium, The *Rooker-Feldman* Doctrine, 74 Notre Dame L. Rev. 1081 (1999); Pfander, An Intermediate Solution to State Sovereign Immunity: Federal Appellate Court Review of State-Court Judgments After *Seminole Tribe*, 46 UCLA L. Rev. 161 (1998); Recent Case, Ninth Circuit Ignores Principles of Federalism and the *Rooker-Feldman* Doctrine: *Bates v. Jones*, 131 F. 3d 843 (9th Cir. 1997) (en banc), 21 Harv. J. L. & Pub. Pol'y 881 (1998); Schmucker, Possible Applications of the *Rooker-Feldman* Doctrine to State Agency Decisions: The Seventh Circuit's Decision in *Van Harken v. City of Chicago*, 17 J. Nat. Assn. Admin. L. Judges 333 (1997); Casenote, *Texaco, Inc. v. Pennzoil Co.:* Beyond a Crude Analysis of the *Rooker-*

*of Columbia Court of Appeals* v. *Feldman*, 460 U. S. 462;
*id.*, at 488 (STEVENS, J., dissenting).    Last Term, in
JUSTICE GINSBURG's lucid opinion in *Exxon Mobil Corp.* v.
*Saudi Basic Industries Corp.*, 544 U. S. 280 (2005), the
Court finally interred the so-called *"Rooker-Feldman*
doctrine."    And today, the Court quite properly disap-
proves of the District Court's resuscitation of a doctrine
that has produced nothing but mischief for 23 years.

My disagreement with the majority arises not from
what it actually decides, but from what it fails to address.
Even though the District Court mistakenly believed it had
no jurisdiction to hear this matter, its judgment dismiss-
ing the cause with prejudice was correct and should be
affirmed.    See *Lance* v. *Davidson*, 379 F. Supp. 2d 1117,
1132 (Colo. 2005).    The Elections Clause claim advanced
by citizen-appellants in this case is the same as that ad-
vanced by their official representatives and decided by the
Colorado Supreme Court in *People ex rel. Salazar* v.
*Davidson*, 79 P. 3d 1221, 1231–1232 (Colo. 2003) (en
banc).    See 379 F. Supp. 2d, at 1126.    As appellee points
out, appellants' second question presented "is literally the
same question presented by the General Assembly on
*certiorari* review (and denied) in *Salazar*."    Motion to
Affirm 12.    And, as a matter of Colorado law, appellants
are clearly in privity with both then-Colorado Attorney
General Salazar, who brought the suit on behalf of the
people of Colorado, and the Colorado General Assembly,
which was also a party to the *Salazar* litigation.    See
*McNichols* v. *City & County of Denver*, 101 Colo. 316, 322,
74 P. 2d 99, 102 (1937) (en banc) (finding privity between
taxpayers seeking to challenge the validity of a bond issue

--------

*Feldman* Doctrine's Preclusion of Federal Jurisdiction, 41 U. Miami L.
Rev. 627 (1987); Comment, *Texaco, Inc. v. Pennzoil Co.:* Some Thoughts
on the Limits of Federal Court Power Over State Court Proceedings, 54
Ford. L. Rev. 767 (1986).

and a public official "charged with ministerial and executive duties in connection" with the issuance of the bonds who already brought such a suit); *Atchison, T. & S. F. R. Co.* v. *Board of County Comm'rs of County of Fremont*, 95 Colo. 435, 441, 37 P. 2d 761, 764 (1934) (en banc) (explaining that taxpayers are in privity with a political division of the State or its official representative if the case involves "a matter of general interest to all the people"). Thus, all of the requirements under Colorado law for issue preclusion have been met, and appellants' Elections Clause claim should therefore be dismissed. See generally 28 U. S. C. §1738; *Michaelson* v. *Michaelson*, 884 P. 2d 695, 700–701 (Colo. 1994) (setting forth requirements for issue preclusion under Colorado law).

Appellants' spurious Petition Clause claim was also properly dismissed by the District Court. See 379 F. Supp. 2d, at 1130–1132. Nothing in the Colorado Constitution prevents appellants from petitioning the Colorado General Assembly with their grievances, *id.*, at 1131; nothing in the United States Constitution guarantees that such a petition will be effective, *Smith* v. *Highway Employees*, 441 U. S. 463, 465 (1979) *(per curiam);* see also *Minnesota State Bd. for Community Colleges* v. *Knight*, 465 U. S. 271, 285 (1984). Moreover, as the District Court recognized, appellants' interpretation of the Petition Clause would lead to absurd results. See 379 F. Supp. 2d, at 1131–1132. As such, appellants' Petition Clause claim was correctly dismissed because it fails to state a claim upon which relief may be granted. See generally Fed. Rule Civ. Proc. 12(b)(6).

For the foregoing reasons I respectfully dissent.